# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| SERICA HADNOT, : | Case No. 1:17-cv-655 |
|     Plaintiff, : | |
| : | Judge Timothy S. Black |
| vs. : | |
| : | |
| PTS OF AMERICA, LLC, *et al.*, : | |
|     Defendants. : | |

## ORDER GRANTING PLAINTIFF'S MOTION
## TO AMEND THE COMPLAINT (Doc. 54)

This civil lawsuit is before the Court on the motion of Plaintiff Serica Hadnot for leave to file a Second Amended Complaint (Doc. 54) and the parties' responsive memoranda (Docs. 56, 57).

## I. INTRODUCTION

Defendant Jim Neil is the Hamilton County Sheriff and, at all relevant times, was the individual in charge of, *inter alia*, jailing prisoners, appearing in court on behalf of Hamilton County for matters including extraditions of prisoners to out of state prisons, and entering into contracts with private persons or entities for the return of Ohio prisoners from outside the state. (Doc. 53 at ¶ 5).

Defendant Jeff Carroll is a captain for the Hamilton County Sheriff and, at all relevant times, was the individual in charge of directing the court services, including indictments and felony warrants, extradition of fugitives, contacting security services for

other County departments, and prisoner transportation. (Doc. 53 at ¶ 6). Sheriff Neil and Mr. Carroll are collectively referred to herein as the "HCSO Defendants."

Defendant PTS of America, LLC ("PTS") contracted with Hamilton County, Ohio to provide transportation services incident to the extradition of prisoners outside of Hamilton County to Hamilton County. (Doc. 53 at ¶ 12). Similarly, PTS contracted with Marion County, Indiana to provide Marion County with transportation services incident to the extradition of prisoners outside of Marion County to Marion County. (*Id.* at ¶ 13).

PTS's transportation contracts with both Hamilton County, Ohio and Marion County, Indiana reserved to PTS the right to refuse to transport prisoners with medical conditions where there is "risk of the medical condition worsening as a result of motor vehicle transport," including "pregnancy." (Doc. 53 at ¶¶ 12, 14). PTS assumed the duty to offer alternative transportation services "[w]hen the medical status of the individual is prohibitive to ground transport, if a written release for such travel is available from licensed medical personnel." (*Id.* at ¶ 15). Despite this contractual language, PTS routinely transports prisoners with medical conditions that should have made such prisoners ineligible for ground transportation pursuant to PTS's written policies. (*Id.* at ¶ 16). At least three such prisoners have died on PTS's transport vehicles as a result of medical conditions that were worsened by motor vehicle transport since 2011 and prior to the occurrences set forth herein. (*Id.* at ¶ 17).

PTS does not train its employees, agents, or contractors in screening prisoners for medical conditions that make such prisoners ineligible for ground transport, including pregnancy. (Doc. 53 at ¶ 18). Sheriff Neil was aware of PTS's unlawful custom or

policy when he contracted with PTS for extradition services. (*Id.* at ¶ 19). Mr. Carroll should have also known about PTS's policies or customs as the person in charge of directing the court services, including indictments and felony warrants, extradition of fugitives, contract security services for other County Departments, and prisoner transportation. (*Id.*) Sheriff Neil contracted with PTS for extradition services though it was obvious PTS would likely accept custody of prisoners with medical conditions that should have made them ineligible for ground transport. (*Id* at ¶ 20).

On May 14, 2016, Ms. Hadnot discovered she was pregnant. (Doc. 53 at ¶ 22).

On June 8, 2016, Ms. Hadnot was arrested on charge of felonious assault after she had a dispute with one of her neighbors. (*Id.* at ¶ 24). All charges were ultimately dismissed. (*Id.*) During Ms. Hadnot's incarceration, Sheriff Neil and/or Mr. Carroll became aware of an outstanding warrant for Ms. Hadnot's arrest which had been issued by the Marion County, Indiana, Sheriff's Office ("MCSO") in connection with a charge for theft/receiving stolen property. (*Id.* at ¶ 27).

Pursuant to the HCSO's normal operating procedures, Sheriff Neil and/or Mr. Carroll obtained a waiver of extradition from Ms. Hadnot on June 13, 2016, and alerted the MCSO, which arranged for Ms. Hadnot's transportation by and through PTS. (Doc. 53 at ¶ 28). On June 14, 2016, the order of extradition issued. (*Id.* at ¶ 31). Ms. Hadnot remained in HCSO's custody until PTS arrived to transport her to Marion County on June 23, 2016. (*Id.*) Ms. Hadnot informed Jane Doe 2, an employee/agent/subcontractor of the HCSO in charge of releasing Ms. Hadnot to the custody of PTS, that she was pregnant and in need of pre-natal vitamins prior to being transported by PTS. (*Id.* at

3

¶ 32). Jane Doe 2 processed the release and told Ms. Hadnot that PTS would handle all of her medical needs. (*Id.*)

PTS took custody of Ms. Hadnot and placed her in leg irons and shackles, a portion of which were wrapped around her abdomen. (Doc. 53 at ¶ 37). Ms. Hadnot was boarded into the transport van and confined to one of three cages on the van. (*Id.*) Ms. Hadnot remained seated and shackled while wedged between two other prisoners over the course of the following three days. (*Id.* at ¶ 39).

During the transport, Ms. Hadnot was subject to overheating temperatures (*id.* at ¶ 40) and denied access to a bathroom for unreasonably long durations (*id.* at ¶ 41). Male prisoners relieved themselves into soda bottles and threw urine on female prisoners, including Ms. Hadnot. (Doc. 53 at ¶ 44). PTS agents threatened the male prisoners with a shotgun, traumatizing Ms. Hadnot. (*Id.*) Ms. Hadnot's feet and ankles became significantly swollen because she was forced to maintain a sedentary position and she became significantly dehydrated. (*Id.* at ¶¶ 45-46). Ms. Hadnot reported that she began bleeding from her vaginal area, but PTS agents did not address her complaints. (*Id.* at ¶ 47).

Ms. Hadnot arrived at the Marion County, Indiana processing center at about 2:30 a.m. on June 26, 2016. (Doc. 53 at ¶ 48). The 100-mile journey from Hamilton County, Ohio took over 70 hours to complete. (*Id.* at ¶ 49). On June 29, 2016, Ms. Hadnot was released from the Marion County jail three days after being processed. (*Id.* at ¶ 62). Ms. Hadnot's husband drove her to the hospital, where she was diagnosed as having suffered an incomplete miscarriage. (*Id.*)

On September 29, 2017, Ms. Hadnot commenced this lawsuit. (Doc. 1). On November 16, 2017, Ms. Hadnot filed an Amended Complaint. (Doc. 4).

On April 9, 2018, the Court put on a Calendar Order that required, *inter alia*, motions directed to the pleadings to be filed by July 8, 2018. (Doc. 42). On June 4, 2018, the HCSO Defendants filed a motion to dismiss the Amended Complaint. (Doc. 46). Ms. Hadnot did not respond to the HCSO Defendants' motion, and instead, on June 25, 2018, filed the Second Amended Complaint (Doc. 53) and a motion for leave to file the Second Amended Complaint (Doc. 54). The Second Amended Complaint asserts one claim against the HCSO Defendants for violation of Ms. Hadnot's constitutional rights under 42 U.S.C. § 1983 (Doc. 53 at ¶¶ 79-97).

The HCSO Defendants oppose Ms. Hadnot's motion for leave on the grounds of futility. (Doc. 56). The HCSO Defendants argue Ms. Hadnot's § 1983 claim fails to state a claim upon which relief can be granted. The HCSO Defendants subsequently moved to strike Plaintiffs' Second Amended Complaint on the grounds that it was filed without the Court's leave in violation of Federal Rule of Civil Procedure 15. (Doc. 61).

## II. STANDARD

Pursuant to Fed. R. Civ. P. 15(a), "leave to amend a pleading shall be freely given when justice so requires." *Coe v. Bell*, 161 F.3d 320, 341 (6th Cir. 1998) (citing *Brooks v. Celeste*, 39 F.3d 125, 130 (6th Cir. 1994)). Rule 15(a) embodies "a liberal policy of permitting amendments to ensure the determinations of claims on their merits." *Marks v. Shell Oil Co.,* 830 F.2d 68, 69 (6th Cir. 1987). In deciding a party's motion for leave to amend, the Court of Appeals for the Sixth Circuit has instructed that district courts must

5

consider several elements, including "[u]ndue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendments . . . ." *Id.*

Importantly, delay alone is insufficient to deny a motion to amend. *Id.* The denial of a motion to amend requires "at least some significant showing of prejudice to the opponent." *Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 834 (6th Cir. 1999).

A court may deny a motion for leave to amend for futility if the amendment could not withstand a motion to dismiss. *Riverview Health Inst., LLC v. Med. Mut. Of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010). For purposes of a motion to dismiss, the Court must view the complaint in the light most favorable to the non-moving party and take all well-pleaded factual allegations as true. *Tackett v. M&G Polymers*, 561 F.3d 478, 488 (6th Cir. 2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Ultimately, determination of whether justice requires the amendment is entrusted to the sound discretion of a district court. *Moore v. City of Paducah*, 790 F.2d 557, 559 (6th Cir. 1986).

### III.   ANALYSIS

The HCSO Defendants argue that Ms. Hadnot should be denied leave to file the Second Amended Complaint on the grounds of futility because her § 1983 claim against

the HCSO Defendants (Count Two of the Second Amended Complaint) fails to state a claim upon which relief can be granted. The Court does not agree.

To establish a cause of action under § 1983, Ms. Hadnot must establish (1) a deprivation of a right secured by the constitution or laws of the United States (2) caused by a person acting under color of state law. *McQueen v. Beecher Cmty. Sch.*, 433 F.3d 460, 463 (6th Cir. 2006). The Second Amended Complaint sufficiently alleges both elements.

### A. Constitutional Violation.

First, the Second Amended Complaint asserts a constitutional violation through the "state-created danger" doctrine. (Doc. 53 at ¶ 82). Though the Fourteenth Amendment's due process clause does not expressly require the state to protect the life, liberty, and property of its citizens against invasion by private actors, courts have recognized that a governmental actor may violate the due process clause by creating a particular danger to the victim. *See Hunt v. Sycamore Cmty. Sch. Dist. Bd. of Educ.*, 542 F.3d 529, 534 (6th Cir. 2008). Under this theory—the "state-created danger doctrine"—a governmental actor can be held responsible for an injury committed by a private person if:

>  (1) An affirmative act by the governmental actor either created or increased the risk that the plaintiff would be exposed to the injurious conduct of the private person;
> 
>  (2) The governmental actor's act especially endangered the plaintiff or a small class of which the plaintiff was a member; and

7

> (3) The governmental actor had the requisite degree of culpability.

*Id.* (citation omitted).

According to the Sixth Circuit, the level of culpability for the state-created danger doctrine is "that level that would suffice to establish a substantive due process violation," in other words, conduct that "shocks the conscience." *Id.* at 535. Culpability that "shocks the conscience" is something in between negligence and intentional, and depends on the particular circumstances:

> We can say that mere negligence is definitely not enough and that conduct intended to injury in some way unjustifiable by any governmental interest is the sort of official action most likely to rise to the conscious-shocking level. But the middle states of culpability, such as recklessness, gross negligence, or deliberate indifference, may or may not be shocking depending on the context. Deliberate indifference that shocks in one environment may not be so patently egregious in another, and our concern with preserving the constitutional proportions of substantive due process demands an exact analysis of circumstances before any abuse of power is condemned as conscience shocking.

*Id.* (internal quotations and citations omitted).

Viewing the allegations of the Second Amended Complaint in a light most favorable to Ms. Hadnot, the pleading sufficiently alleges a constitutional violation under the state-created danger doctrine. Initially, Ms. Hadnot's state-created-danger claim is premised on an "affirmative act," to wit, the Second Amended Complaint alleges Sheriff Neil entered into a contract with PTS to transport prisoners when he and Mr. Carroll (who was in charge of extradition) knew, or should have known, that PTS transports prisoners with medical conditions who are not safe to transport. (*See* Doc. 53 at ¶¶ 12,

19, 20). The Second Amended Complaint also alleges the HCSO Defendants took the affirmative act of arranging Ms. Hadnot's transfer to the custody and control of PTS. (*Id.* at ¶¶ 31-32).[1]

Next, the Second Amended Complaint alleges these acts specifically endangered Ms. Hadnot and/or other prisoners with medical conditions who were not safe to transport. (*See* Doc. ¶¶ 16-17, 19-20).

Finally, the Second Amended Complaint sufficiently alleges that the HCSO Defendants had the requisite culpability. Again, the Second Amended Complaint alleges that the HCSO Defendants knew (or should have known) that PTS transported prisoners with medical conditions who were not safe to transport at the time they (1) contracted with PTS to transport prisoners and (2) made Ms. Hadnot available for transport. At this juncture, the Second Amended Complaint plausibly alleges behavior that "shocks the conscience."

B. **State Action.**

Because the HCSO Defendants are state actors and Ms. Hadnot's state-created danger claim is premised on their affirmative acts, the Second Amended Complaint

---

[1] Several paragraphs of the Amended Complaint accuse Sheriff Neil and Mr. Carroll of failing to provide adequate training to their subordinates in how to prescreen prisoners for conditions that made them ineligible for ground transport. (*See* ¶ 89). The Court notes that Ms. Hadnot's claim cannot be premised on these allegations because a state-created danger claim must be premised on an affirmative act as opposed to an omission. *See Waters v. Perkins Local Sch. Dist. Bd. of Educ.*, Case No. 3:12-cv-732, 2014 U.S. Dist. LEXIS 43660, at ** 59-64 (N.D. Ohio Jan. 31, 2014) (Plaintiffs' argument that Defendants failed to take any action to curtail bullying did not support a state-created danger claim because "an omission or failure to act will not support a state-created danger exception.").

sufficiently alleges the second prong of the § 1983 claim, *i.e.*, that Ms. Hadnot's alleged constitutional deprivation was caused by persons acting under color of state law.

Accordingly, the Court finds that the Second Amended Complaint sufficiently alleges a plausible state-created danger claim and is not futile as to the HCSO. As "futility" is the only grounds asserted by the HCSO Defendants in opposition to Ms. Hadnot's request for leave, the Court finds Ms. Hadnot's motion for leave to amend (Doc. 54) well-taken and **GRANTS** same.[2]

Additionally, the Court finds that because the Second Amended Complaint is now the operative pleading and supersedes the Amended Complaint, the HCSO Defendants' motion to strike the Second Amended Complaint (Doc. 61) is **DENIED**, and the HCSO Defendants' pending motion to dismiss the First Amended Complaint (Doc. 46) is **DENIED as moot**. *See Yates v. Applied Performance Techs, Inc.*, 205 F.R.D. 497, 499 (S.D. Ohio 2002) ("Because amended complaints supersede the original pleading, the filing of the amended complaint in this case did technically render the pending motion to dismiss moot.").

## IV. CONCLUSION

For the foregoing reasons, Ms. Hadnot's motion for leave to amend (Doc. 54) is **GRANTED.** The Second Amended Complaint (Doc. 53) shall be Plaintiff's operative pleading. The HCSO Defendants' motion to strike the Second Amended Complaint

---

[2] The HCSO Defendants do not raise any other arguments, such as undue delay, in support of their position. The Court finds there is no issue with the timing of Ms. Hadnot's motion to amend, as the motion was filed within the time allotted by the Calendar Order. (*See* Doc. 42).

(Doc. 61) is **DENIED**.  The HCSO's motion to dismiss the First Amended Complaint (Doc. 46) is **DENIED as moot**.

    **IT IS SO ORDERED.**

Date:     1/29/19                          *Timothy S. Black*
                                                      Timothy S. Black
                                                      United States District Judge